IN THE CIRCUIT COURT OF THE
TENTH JUDICIAL CIRCUIT, IN AND
FOR POLK COUNTY, FLORIDA

ZAIRA MEDINA-RODRIGUEZ and
MELISSA VAZQUEZ DIAZ

CASE NO.: 25-CA-
FLA BAR NO.: 0739685

    Plaintiff,

v.

BOARD OF TRUSTEES, FLORIDA
POLYTECHNIC UNIVERSITY,

    Defendant.
_____/

# COMPLAINT

Plaintiff, ZAIRA MEDINA-RODRIGUEZ and Plaintiff, MELISSA VAZQUEZ DIAZ, hereby sues Defendant, BOARD OF TRUSTEES, FLORDIA POLYTECHNIC UNIVERSITY, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiffs, ZAIRA MEDINA-RODRIGUEZ and MELISSA VAZQUEZ DIAZ, have been residents of the State of Florida and were employed by Defendant. Plaintiffs are members of a protected class due to their gender, female.

4. At all times pertinent hereto, Defendant, BOARD OF TRUSTEES, FLORIDA POLYTECHNIC UNIVERSITY ("Defendant" or "University")has been organized and existing

under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiffs' employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.  Plaintiffs have satisfied all conditions precedent to bringing this action, if any.

## STATEMENT FACTS (ZAIRA MEDINA-RODRIGUEZ)

6.  Plaintiff, a female, began her employment with Defendant on August 8, 2016, and held the position of Interim Executive Assistant at the time of her wrongful termination on August 21, 2024. Plaintiff was hired by Director of Academic Affairs, Melissa Vazquez Diaz, a female.

7.  Plaintiff was a loyal and dedicated employee who received the Presidential Pinnacle Award in 2019. This is the highest award that an employee can receive on behalf of the University, which only one employee receives each year. Plaintiff has never received any reprimands throughout her employment with Defendant and her evaluations always exceeded expectations. Despite her stellar work performance during her employment with Defendant, Plaintiff was been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her gender.

8.  The disparate treatment came at the hands of specifically but not limited to Interim Provost & Vice President of Academic Affairs Dr. Brad Thiessen, male, Vice President and Chief Financial Officer Dr. Allen Bottorff, male and Vice President of Student Affairs/ Enrollment Management/ Strategic Communication Bryan Brooks, male.

9.  On July 8, 2024, Defendant hired a new President, Dr. G. Devin Stephenson, and he brought on a new administration which included Brooks and Thiessen.

2

10. On August 8, 2024, Executive Assistant to the VP of Student Affairs, Eva Porter (female) was hired. Special Assistant to the President and Corporate Secretary to the Board of Trustees (BOT), Kris Wharton (female), was tasked with mentoring and training Porters.

11. On or around August 8, 2024, Wharton requested Vazquez send the training agenda to Wharton so she could promptly train Porter which Vazquez completed on or around August 9, 2024.

12. On August 12, 2024, Plaintiff received an offer letter for the position of Interim Executive Assistant. Subsequently, Plaintiff requested a meeting with Associate Vice President of Human Resources Eunice Alberson who advised that the position was approved by Thiessen. Plaintiff mentioned that she had spoken with Thiessen earlier that day, and he had expressed concerns about the title change to Interim Executive Assistant since the position was approved as Executive Assistant, not Interim, and the low salary she was being offered, which made it seem unusual that he had signed the offer letter. Alberson explained that the decision regarding the offer had been made by her and Bottorff, as they held higher positions than Thiessen. She also informed Plaintiff that she had been appointed as Interim to protect her job in the event Thiessen left and a new hire brought in their own assistant. In this case, Plaintiff would retain her job and return to her prior role as Administrative Assistant III. Plaintiff then requested a meeting with Thiessen, Bottorff, and Alberson. Alberson agreed to arrange the meeting. Later that day, Alberson scheduled the meeting, but Plaintiff was not included. Instead, Plaintiff received an email confirming that the offer for the Interim Executive Assistant position was final, prompting Plaintiff to sign the offer letter.

13. On August 21, 2024, Porter had grown increasingly concerned regarding the lack of training she was receiving which led to her experiencing issues understanding core functions.

3

She expressed increasing concerns about inadequate training to Brooks, stating she was not being trained properly, and that Plaintiff was unwilling to help her. In response, Medina-Rodriguez met with Brooks and explained that she was never asked to train Porter. Brooks reassured Medina-Rodriguez that it was a communication issue and that she was not at fault.

14. Porter sat in the same office as Plaintiff and as Plaintiff witnessed her frustration, she informed Human Resources Coordinator Federico Despiau that Porter was upset. Despiau agreed with Plaintiff that Defendant had no training system for new employees, which caused frustration within other departments/divisions as well. Despiau advised he would reach out to Alberson regarding this and then email Plaintiff.

15. Plaintiff subsequently received an email from Despiau requesting Plaintiff's assistance in arranging training for Porter and another new employee, Administrative Assistant III Chantal Cortes. Plaintiff subsequently sent the training requests immediately to Assistant Vice President & Controller in the Finance Department Penelope Farley, Director in the Procurement Department Andrea Cashell, and Vice President, Information Technology Services & CIO in the IT Department Mike Dieckmann.

16. That morning, on August 21, 2024, Porter resigned which caused Brooks to become upset. Around 1:00 p.m., Brooks had a Teams meeting with Alberson, Bottorff and Thiessen. During this meeting Plaintiff could hear parts of the conversation, since her desk was in the same office area. Despite Plaintiff and Vazquez Diaz following their due diligence and properly providing the training materials, Brooks stated, "Melissa and Zaira sabotaged Eva" and "I will not hire anyone if they have to sit next to Zaira."

17. That afternoon on August 21, 2024, both Plaintiff and Vazquez Diaz were terminated as Defendant claimed they were "at will" employees and "that was just the direction they wanted to go."

18. Notably, Plaintiff's male colleagues, who are outside of her protected class, were not treated the same way. For instance, former Vice Provost of Academic Affairs Dr. Tom Dvorske was terminated in August 2023 but continued to receive pay and had full access to University systems and emails until December 2023. Dvorske was even rehired by the new administration, despite having a growing negative HR file. In contrast, Plaintiff, a seasoned employee with an excellent record, awards, and performance evaluations, was terminated without warning while in the process of being promoted. Initially, she was given three weeks of pay, but her access to University systems was immediately revoked.

19. On August 29, 2024, Vazquez Diaz sent an email to the Board of Trustees and asked them to investigate Defendant's discriminatory actions towards Plaintiff Medina-Rodriguez. Chief Compliance Officer David Blanton met with Plaintiff and Vazquez and stated, based on their concerns, there was substantial evidence of wrongdoing, and that he would talk to the VP/General Counsel David Fugett and advise them it would be in their best interest to work something out with Plaintiff and Vazquez Diaz.

20. On September 25, 2024, Fugett invited Plaintiff and Vazquez Diaz, to a Teams meeting with Thiessen to discuss having their continued support for responsibilities related to their core functions. This meeting was an attempt to "soften their landing." During the meeting, they discussed tasks that Vazquez Diaz and Plaintiff could assist with remotely until a specified date, likely November 30, 2024. After that date, they would have the option to resign rather than be terminated. Any allegation of performance deficiency, if there ever was one, was defeated by

2025CA-001620-A000-BA     Received in Polk 04/29/2025 05:57 PM

this request that they continue assisting with job duties. This was also Fugett's attempt to pressure Plaintiff into submitting her resignation. Fugett argued that it would be better for them to resign voluntarily, rather than having to explain to future employers that they had been fired, despite the University's policy to not disclose the specific reason for terminating an employee to future employers. Plaintiff declined the offer.

21. Notably, Defendant has demonstrated a consistent pattern of gender-based discrimination. Specifically, Vice Provost of Student Affairs Dr. Kathryn Miller, and Professor/Department Chair of Engineering Programs Dr. Mary Vollaro, both highly qualified women with impressive credentials and successful careers, were removed from their leadership positions. These roles were then filled by male candidates with fewer qualifications, experience, and accomplishments. Dr. Miller's position was eliminated by Brooks, and she was offered a lower-paying role as Director of Libraries under Thiessen, with a salary reduction of $50,000. Before Dr. Miller could negotiate the terms of this new position, she was terminated in September 2024. Despite Dr. Miller's and Dr. Vollaro's strong performances, Dr. Miller's position was replaced by Dr. Jon Pawlecki (male), who was appointed Assistant Vice President of Student Affairs. Similarly, Dr. Vollaro's Department Chair roles were filled by Dr. Matt Bohm (male) and Dr. Muhammad Rashid (male). As a result, all Department Chair positions are now held by men.

22. Notably, since Stephenson took office as President and hired a new administration, a total of at least nine women have either been terminated, mistreated or resigned due to the current environment. Also, since Stephenson's hire, he has onboarded only men, specifically, Thiessen, Brooks, Cole Allen and Dr. Andy Oguntola- no women.

2025CA-001620-A000-BA        Received in Polk 04/29/2025 05:57 PM

23. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## STATEMENT FACTS (MELISSA VAZQUEZ DIAZ)

24. Plaintiff, a female, began her employment with Defendant on or about April 13, 2013, and held the position of Manager of University Budgets at the time of her wrongful termination on August 21, 2024.

25. Plaintiff was a loyal and dedicated employee who received the Quiet Quality Award in 2023, the Pheonix Spirit Award, and a Leadership Academy certificate during Defendant's award ceremony, where she was part of an inaugural group of leaders selected by executive leadership for a nine-month Organizational Leadership Specialization program. All of these awards recognized Plaintiff's exceptional work and positive impact on her colleagues Plaintiff has never received any reprimands throughout her employment with Defendant and her evaluations always exceeded expectations.

26. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her gender.

27. The disparate treatment and retaliation came at the hands of specifically but not limited to Interim Provost & Vice President of Academic Affairs Dr. Brad Thiessen, male, Vice President and Chief Financial Officer Dr. Allen Bottorff, male, and Vice President of Student Affairs/ Enrollment Management/ Strategic Communication Bryan Brooks, male.

28. On July 8, 2024, Defendant hired a new President, Dr. G. Devin Stephenson and he brought on a new administration which included Brooks and Thiessen.

29. On this day, University Leadership which included Bottorff, Vice President/ General Council Dr. David Fugett, and Associate Vice President of Human Resources Eunice Alberson met with the core Academic Affairs team, which included Plaintiff. During the meeting, leadership advised the team that new Interim Provost Thiessen would be replacing Former Provost Dr. Terry E. Parker's position. Plaintiff and her team were advised that this would be the only major action taken by the new leadership and that they should feel safe in their positions.

30. On July 11, 2024, Thiessen called Plaintiff into his office to discuss two new career opportunities for her. The options were to stay in Academic Affairs (AA) and discuss future plans with the role or move to the Finance Department. Thiessen stated that Alberson would be in touch regarding the option in Finance but stressed numerous times that he wanted Plaintiff to stay in AA.

31. On July 16, 2024, Alberson sent a message through teams to Plaintiff asking to meet in the President's conference room to discuss a potential job change. Alberson, Bottorff and Thiessen were present at the meeting. During this meeting, Alberson and Bottorff explained they would love to have Plaintiff join the Budget Office due to her successful development and management of a multimillion (26 million+) dollar budget within AA. Thiessen repeated that he would have to reach out to HR for help in determining what Plaintiff's options were in AA but that ultimately, he wanted her to stay in AA.

32. On July 17, 2024, in a follow up meeting with HR, Alberson explained to Plaintiff that she and Bottorff considered her strengths, age, upcoming departmental retirements and possible changes and thought the new position would give her a career path forward. Plaintiff

8

communicated her decision to accept the new position to Thiessen, Farley and then through email to Alberson.

33. Plaintiff continued to have meetings with the Assistant Vice President/ University Controller Penelope Farley, and Director of Budgets Brittaney Sottile-Roe, ultimately solidifying that she wanted to transition to Manager of University Budgets. Plaintiff was given a five percent raise with this position. The salary was back dated to July 1, 2024, even though the official date of transition to Manager, University Budgets would not occur until September 9, 2024, to allow time for Plaintiff to assist colleague and Administrative Assistant III Zaira Medina-Rodgriguez with transition into her new position of Interim Executive Assistant.

34. On July 22, 2024, the Finance Department sent out a notification to the Finance team that Plaintiff was joining them and to welcome her aboard.

35. On or about August 7, 2024, Plaintiff then began transitioning to Defendant's South campus where the Finance Department was located.

36. On August 8, 2024, Executive Assistant to the VP of Student Affairs, Eva Porter (female) was hired. Brooks requested that Special Assistant to the President & Corporate Secretary to the Board of Trustees (BOT), Kris Wharton (female) mentor and train Porter. In a phone call with Plaintiff, Wharton requested that Plaintiff send her a training agenda template that she could use in her training with Porter, to which Plaintiff sent subsequently the next day (August 9, 2024). During this call, Wharton confirmed to Plaintiff that she was going to use the training agenda during her meeting with Porter and review it with her. Wharton did not send over the training agenda to Porter on this day. Porter was growing concerned with the lack of training and understanding of core functions.

37. On August 20, 2024, Plaintiff began fully using her office in the Finance Department, located at the Polk State College campus. Plaintiff requested a meeting with her new supervisor, Sottile-Roe to let her know she was able to start earlier in her new role as the Finance Department was preparing for the implementation of a new software Adaptive. Sottile-Roe confirmed she would stop by her office after her scheduled meetings.

38. On the same day at the Polytechnic Campus, Wharton provided the training agenda to Porter, eleven days after the Plaintiff had originally sent it to Wharton. This delay contributed to Porter's anxiety and frustration about training for her new role.

39. On August 21, 2024, Porter resigned due to the lack of training, which caused Brooks to become upset. Around 1:00 p.m., Brooks had a Teams meeting with Alberson, Bottorff and Thiessen. During this meeting Medina-Rodriguez could hear parts of the conversation, since her desk was in the same office area. Despite Plaintiff and Medina-Rodriguez following their due diligence and properly providing the training materials, Brooks stated, "Melissa and Zaira sabotaged Eva." Medina-Rodriguez, whom overheard this comment, then relayed this message to Plaintiff. Plaintiff was not present in the provost office since she vacated the office in preparation for Porter's arrival and had no interactions with her outside of welcoming her to the team.

40. Subsequently, that afternoon on August 21, 2024, both Plaintiff and Medina-Rodriguez were terminated as Defendant claimed they were "at will" employees and "that was just the direction they wanted to go."

41. After Plaintiff's termination, all her direct reports were subsequently reassigned to report to all male direct reports. By way of example, Christian Heningsmith, Karina Garcia-Martinez and Amanda Blinn reported to Pawlecki. Dara Griffis reported to Department Chair Ian

Bentley. Tina Thomas reported to Department Chair Shahram Taj. Fabienne Dupervil reported to Department Chair Mike Brillslyper. Sherri Bougher reported to University Registrar Andrew Konapelsky. Amelia Richter reported to Interim Vice Provost Enrollment Management David Poole. Patti Huls reported to Thiessen.

42. Notably, Plaintiff's male colleagues, Former Vice Provost of Academic Affairs Dr. Tom Dvorske (male) was terminated in August 2023 but continued to receive pay and had full access to University systems and emails until December 2023. Dvorske was even rehired by the new administration, despite having a growing negative HR file. In contrast, Plaintiff, a seasoned employee with an excellent record, awards, and performance evaluations, was terminated without warning while in the process of being promoted. Initially, she was given three weeks of pay, but her access to University systems was immediately revoked.

43. On August 29, 2024, Plaintiff sent an email to the Board of Trustees and asked them to investigate Defendant's discriminatory actions. Chief Compliance Officer David Blanton met with Plaintiff and Medina-Rodriguez and stated, based on their concerns, there was substantial evidence of the wrongdoing, and that he would talk to the General Council and advise them it would be in their best interest to work something out with Plaintiff and Medina-Rodriguez.

44. On September 25, 2024, Fugett invited Plaintiff and Medina-Rodriguez to a Teams meeting with Thiessen to discuss having their continued support for responsibilities related to their core functions. This meeting was an attempt to "soften their landing." During the meeting, they discussed tasks that Plaintiff and Medina-Rodriguez could assist with remotely until a specified date, likely November 30, 2024. After that date, they would have the option to resign rather than be terminated. This directly contradicted the stated reason for Plaintiff and

2025CA-001620-A000-BA        Received in Polk 04/29/2025 05:57 PM

Medina-Rodriguez's termination as "at-will" employees, as they were now being asked to continue assisting with job duties. This was also Fugett's attempt to pressure Plaintiff and Medina-Rodriguez into submitting a voluntary resignation. Fugett argued that it would be better to have them resign voluntarily, rather than having to explain to future employers that they had been fired, despite the University's policy to not disclose the specific reason for terminating an employee to their future employers. Plaintiff and Medina-Rodriguez declined the offer.

45. Notably, Defendant has demonstrated a consistent pattern of gender-based discrimination. Specifically, Vice Provost of Student Affairs Dr. Kathryn Miller, and Professor/Department Chair of Engineering Programs Dr. Mary Vollaro, both highly qualified women with impressive credentials and successful careers, were removed from their leadership positions. These roles were then filled by male candidates with fewer qualifications, experience, and accomplishments. Dr. Miller's position was eliminated by Brooks, and she was offered a lower-paying role as Director of Libraries under Thiessen, with a salary reduction of $50,000. Before Dr. Miller could negotiate the terms of this new position, she was terminated in September 2024. Despite Dr. Miller's and Dr. Vollaro's strong performances, Dr. Miller's position was replaced by Dr. Jon Pawlecki (male), who was appointed Assistant Vice President of Student Affairs. Similarly, Dr. Vollaro's Department Chair roles were filled by Dr. Matt Bohm (male) and Dr. Muhammad Rashid (male). As a result, all Department Chair positions are now held by men.

46. Notably, since Stephenson took office as President and hired new administration, a total of at least nine women have either been terminated, mistreated or resigned due to the current environment. Also, since Stephenson's hire, he has onboarded only men, specifically, Thiessen, Brooks, Cole Allen and Dr. Andy Oguntola- no women.

47. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## GENDER DISCRIMINATION

47. Paragraphs 1 through 47 are re-alleged and incorporated herein by reference.

48. This is an action against Defendant for discrimination based upon gender brought under Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

49. Plaintiffs have been the victim of discrimination on the basis of their gender in that they was treated differently than similarly situated employees of Defendant who are male and have been subject to disparate and poor treatment on the basis, at least in part, of their gender.

50. Defendant is liable for the differential treatment and hostility towards Plaintiffs because it controlled the actions and inactions of the persons making decisions affecting Plaintiffs or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiffs.

51. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiffs as more fully set forth above because it allowed the differential treatment and participated in same.

52. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

53. The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs' continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiffs' terminations.

54. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

55. As a direct and proximate result of Defendant's conduct described above, Plaintiffs have suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiffs are entitled to injunctive/equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiffs;

(c) enter judgment against Defendant and for Plaintiffs awarding all legally-available general and compensatory damages and economic loss to Plaintiffs from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiffs permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiffs awarding Plaintiffs attorney's fees and costs;

(f) award Plaintiffs interest where appropriate; and

(g)  grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein that are so triable.

DATED this 25th day of April 2025.

                                        Respectfully submitted,

                                        /s/ Marie A. Mattox
                                        Marie A. Mattox [FBN 0739685]
                                        MARIE A. MATTOX, P. A.
                                        203 North Gadsden Street
                                        Tallahassee, FL 32301
                                        Telephone:  (850) 383-4800
                                        Facsimile:  (850) 383-4801
                                        Marie@mattoxlaw.com
                                        Secondary emails:
                                        marlene@mattoxlaw.com
                                        michelle@mattoxlaw.com
                                        discovery@mattoxlaw.com

                                        ATTORNEYS FOR PLAINTIFF

FORM 1.997.   CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>TENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>POLK</u>   COUNTY, FLORIDA

<u>ZAIRA MEDINA-RODRIGUEZ, MELISSA VASQUEZ DIAZ</u>
Plaintiff                                                                                   Case # _____
                                                                                            Judge _____

vs.
<u>BOARD OF TRUSTEES, FLORIDA POLYTECHNIC UNIVERSITY</u>
Defendant

II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

III.   TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☒ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☒ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [ ]
(Specify)

   1

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
☐ yes
☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ no
☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ yes
☐ no

**IX. DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
☐ yes
☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Marie A Mattox      Fla. Bar # 739685
          Attorney or party           (Bar # if attorney)

Marie A Mattox      04/29/2025
(type or print name)      Date

- 3 -

2025CA-001620-A000-BA     Received in Polk 04/29/2025 05:57 PM